IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TINA L. STOKER, a/k/a SHONDON STOKER, | |
| Plaintiff, | |
| v. | No. 3:19-cv-00909-N-BT |
| SELECT PORTFOLIO SERVICING, INC., | |
| Defendant. | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendant Select Portfolio Servicing, Inc.'s Rule 12(b)(6) Motion to Dismiss (ECF No. 9) and Motion for Summary Judgment (ECF No. 16), both requesting the Court dismiss Plaintiff Tina L. Stoker's claims against Defendant. For the reasons stated, the Court should GRANT Defendant's Motion for Summary Judgment, DISMISS with prejudice Plaintiff's claims against Defendant, and DENY as moot Defendant's Motion to Dismiss.

**Background**

This action arises out of Defendant Select Portfolio Servicing, Inc.'s attempted foreclosure of Plaintiff Tina L. Stoker, also known as Shondon Stoker's, home in Seagoville, Texas (the "Property"). Plaintiff obtained a mortgage loan to purchase the Property, as evidenced by the promissory Note (the "Note") she executed, payable to Long Beach Mortgage Company (Long Beach) on March 22,

1

2006. Pl.'s Pet. 4 ¶ 10 (ECF No. 1-5); Def.'s App. 6-7, 11-14 (ECF No. 18). Plaintiff also executed a Deed of Trust (the "Deed of Trust") in favor of Long Beach, securing repayment of the Note with the Property. Pl.'s Pet. 4 ¶ 10; Def.'s App. 16-21. Plaintiff's loan was transferred to mortgage-servicer Washington Mutual Bank, then to J.P. Morgan Chase, and finally, to Defendant Select Portfolio Servicing, the current servicer. Pl.'s Pet. 4-5 ¶¶ 10, 14.

Since 2009, Plaintiff has been in default several times and obtained four loan modifications—in October 2009, May 2012, August 2013, and September 2014. *Id.* 4-5 ¶¶ 11, 13, 15. After Plaintiff defaulted on the loan after the fourth modification, Defendant sent her a notice of default on February 25, 2016, specifying the amount to cure the default and further cautioning that to avoid acceleration Plaintiff must pay the amount by March 26, 2016. Def.'s App. 25-28. Defendant contends Plaintiff did not cure the default before the deadline, "or at any time thereafter." Def.'s Br. Support 9 (ECF No. 17); Def.'s App. 7 ¶ 8.

In April 2017, Plaintiff requested and was approved for a repayment plan so that she could repay the delinquent amount over a period of time. Pl.'s Pet. 5 ¶ 16. But she defaulted on the repayment plan after making "a few payments." *Id.* As a result, Plaintiff obtained another repayment plan in April 2018. *Id.* 5 ¶ 17. She again defaulted and filed bankruptcy on November 11, 2018, "which was dismissed on December 20, 2018, for failure to file."[1] *Id.* 5 ¶¶ 17-18. Though "Stoker has made

---

[1] Defendant notes "Plaintiff filed a second bankruptcy after the filing of this suit, which is currently pending. Defendant has filed a Suggestion of Bankruptcy

2

payments under various repayment plans, those payments have never been sufficient to cure her default." Def.'s App. 7 ¶ 8. The loan remains in default and due for the September 1, 2016 payment. *Id.*

The Property was then posted for the April 2, 2019 foreclosure sale, and Plaintiff filed her Original Petition and Application for Temporary Restraining Order on March 29, 2019, in the 162nd Judicial District Court of Dallas County, Texas, alleging "she was fraudulently induced to make payments under an agreed repayment plan and that SPS failed to provide her with additional notice of her default after she defaulted on the repayment plan." Notice 1-2 (ECF No. 1); *see also* Pl.'s Pet. 2, 7-9. As a result, Plaintiff contends Defendant may not foreclose on the Property and she is entitled to injunctive relief, actual and exemplary damages,

---

herein." Def.'s Br. Support 9 n.2 (citing Suggestion of Bankruptcy (ECF No. 13)). While Defendant's Suggestion of Bankruptcy does not request relief from the Court, 11 U.S.C. § 362(a) provides that the filing of a bankruptcy petition operates as an automatic stay, applicable to all entities, of any judicial "proceeding *against the debtor*," and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate [or debtor]." 11 U.S.C. § 362(a)(1), (3) (emphasis added); *see also Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1148 (5th Cir. 1987) (quoting 11 U.S.C. § 362(a)(3)). But "a section 362(a)(1) stay is available only for the debtor's benefit and does not prohibit actions against nonbankrupt third parties or codefendants." *S.I. Acquisition*, 817 F.2d at 1147 (citing *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983)). Because Stoker is the plaintiff, her bankruptcy petition does not trigger an automatic stay of the matter. *Jorrie v. Bank of N.Y. Mellon Tr. Co., N.A.*, 740 F. App'x 809, 812 (5th Cir. 2018) (per curiam) ("Jorrie's July 2017 bankruptcy filing did not trigger an automatic stay of the present litigation . . . because Jorrie is the plaintiff in this case, and 11 U.S.C. § 362(a)'s automatic stay applies only to judicial proceedings that are '*against* the debtor.'"); *In re Versoy*, 306 F. App'x 65, 68-69 (5th Cir. 2009) (per curiam) (citation omitted) (explaining that "if the debtor brings the initial claim, [11 U.S.C.] § 362 has no effect").

and attorney's fees. Pl.'s Pet. 9-11. The state court enjoined Defendant from proceeding with the April 2, 2019 foreclosure sale. TRO (ECF No. 1-6). Defendant filed an answer in state court and removed this lawsuit to federal court, on the basis of both federal-question and diversity jurisdiction. Answer (ECF No. 1-11); Notice.

After that, Plaintiff's counsel withdrew, and Defendant filed its Motion to Dismiss. Plaintiff, proceeding *pro se*, failed to file a response, and, before the Court could reach the Motion to Dismiss, Defendant filed the pending Motion for Summary Judgment, pursuant to the, now vacated, deadlines established by the Court's Scheduling Order. Sched. Order (ECF No. 7). The Court set a briefing schedule on Defendant's Motion for Summary Judgment and required Plaintiff to file a response no later than February 7, 2020. Order (ECF No. 19). Plaintiff again failed to respond, and the time to do so has expired. Defendant's Motion for Summary Judgment is, therefore, ripe for determination. Because Defendant's Motion to Dismiss and Motion for Summary Judgment seek the same relief, the Court finds it most expedient to consider the Motion for Summary Judgment first.

## Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the

nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); Fed. R. Civ. P. 56(e)). The party opposing the summary-judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary-judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

## Analysis

The Court first addresses Plaintiff's breach-of-contract claim before turning to her fraudulent-inducement claim and requests for an injunction and attorney's fees.

Breach of Contract

Defendant is entitled to summary judgment on Plaintiff's breach-of-contract claim because the evidence establishes it provided Plaintiff with a notice of default as required by the Deed of Trust; Plaintiff never cured the default such that renewed notice of default was not required; and Plaintiff has put forth no evidence of damages, a required element of a breach-of-contract claim. "Under Texas law, the elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003) (citing *Renteria v. Trevino*, 79 S.W.3d 240, 242 (Tex. App.—Houston [14th Dist.] 2002, no pet. h.), *abrogated on other grounds by Dolgencorp of Texas, Inc. v. Lerma*, 288 S.W.3d 922 (Tex. 2009); *La Villa Indep. Sch. Dist. v. Gomez Garza Design, Inc.*, 79 S.W.3d 217, 225 (Tex. App.—Corpus Christi 2002, pet. denied)); *see also Peters v. JP Morgan Chase Bank, N.A.*, 600 F. App'x 220, 224 (5th Cir. 2015) (per curiam).

Here, Plaintiff contends Defendant breached the Deed of Trust by failing to provide her "*another* Notice of Default" after she made several payments under the April 2018 Repayment Plan. Pl.'s Pet. 7-8 ¶ 27 (emphasis added); *see also* Def.'s Br. Support 12. The Deed of Trust requires the:

> Lender . . . [to] give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the

6

> date notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph [ ], including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under this Note described above or the amount allowable under applicable state law and costs of title evidence.

Def.'s App. 77 ¶ 21. Defendant mailed a "Demand Letter–Notice of Default," dated February 25, 2016, via certified mail to Plaintiff. *Id.* 23-28. That Demand Letter fulfilled the Deed of Trust's requirements for a notice of default. It specified the default by stating, "[t]he mortgage on your property is in default as a result of your failure to make payments as required by the Note and Deed of Trust . . . ." *Id.* 25. It detailed the action required to cure the default—"[t]o cure this default, you must pay the Amount Required to Cure together with payments which may subsequently become due, on or before the Cure Date listed below thirty (30) days from the date of this letter." *Id.* 26. It provided a date, March 26, 2016, by which the default must have been cured, at least 30 days from the date of the letter; specified the amount required to cure, $20,260.65; and cautioned "[i]f we do not receive the Amount

7

Required to Cure by the Cure Date listed above, or some loss mitigation alternative to foreclosure has not started, the Noteholder will accelerate all payments owing on your Note and require that you pay all payments owing and sums secured by the Security Instrument in full, and may take additional action up to and including referral for legal action. If that happens, you may lose your home." *Id*. The Demand Letter further informed Plaintiff of her "right to reinstate [her] loan even after foreclosure has been initiated and prior to sale" and "to bring a court action if [she] claim[s] that the loan is not in default or if [she] believe[s] that [she] ha[s] any other defense to the foreclosure." *Id*. 26-27. Accordingly, Defendant's February 25, 2016 Demand Letter satisfied the Deed of Trust's requirements that the lender must fulfill to provide effective notice of default to the borrower before accelerating the debt.

    Plaintiff, however, alleges that Defendant breached the Deed of Trust because it did not give her renewed notice of default in 2018 after she made "numerous payments to Defendant SPS, particularly the lump sum payment of $20,000.00 with one regular payment totaling $24,485.00." Pl.'s Pet. 7 ¶ 27. But the "Loan Records reflect that Tina Stoker did not cure the default on or before the Cure Date in the Notice of Default, and that at all times since February 25, 2016, the Loan has remained in default." Def.'s App. 7 ¶ 8. While Plaintiff "made payments under various repayment plans, those payments have never been sufficient to cure her default." *Id*. "[O]n or about May 7, 2018, Tina Stoker entered into a repayment plan agreement wherein she agreed to make one payment of

8

$20,000 on or before May 7, 2018, and then 11 payments of $4,485.50 each month thereafter in order to bring the loan contractually current." *Id.* 7 ¶ 10, 34-36. The April 13, 2018 Repayment Plan letter warned, "Failure to make any of the specified payments in full, by the due date, will also result in the termination of this Plan." *Id.* 35. However, as of June 20, 2018, Plaintiff "failed to make the payments as set forth in the repayment plan[;] . . . the repayment plan was withdrawn"; and her account returned to "normal servicing activities." *Id.* 8 ¶ 11; Def.'s App. 38-39; Pl.'s Pet. 5 ¶ 17. Her "Loan remains in default and is due for the September 1, 2016 payment." Def.'s App. 7 ¶ 8. Defendant was not required to send another notice of default at that point because the Deed of Trust specifically states, "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of . . . this Security Instrument . . . . If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument *without further demand.*" *Id.* 77 (emphasis added). Accordingly, the evidence establishes that Defendant fulfilled its obligation under the Deed of Trust to provide notice of default to Plaintiff before accelerating the debt and that Plaintiff never cured the default to necessitate renewed notice of default. Plaintiff fails to identify any evidence in the record that supports her claim that Defendant breached the Deed of Trust.

      Additionally, Plaintiff has provided no evidence that she suffered damages as a result of Defendant's alleged breach. To succeed on a breach-of-contract claim, Texas law requires plaintiffs to prove they were damaged as a result of the breach.

9

*Sport Supply Grp.*, 335 F.3d at 465. In this case, Plaintiff obtained a temporary restraining order and remains in possession of the Property. Pl.'s Pet. 4 ¶ 9 ("At all relevant and material times hereto, Plaintiff was and is the fee simple owner of the subject Property."); Def.'s Br. Support 14; *see Peoples v. BAC Home Loans Servicing, LP*, 2011 WL 1107211, at *4 (N.D. Tex. Mar. 25, 2011) (finding "no evidence in the record that plaintiff has suffered the type of damages recoverable under a breach of contract claim" when "plaintiff testified that no foreclosure has occurred[;] she has remained in continuous possession and occupation of the residence[;] and title remains in her name"). Because Plaintiff failed to offer evidence establishing that she was damaged as a result of Defendant's alleged breach of the Deed of Trust, her breach-of-contract claim fails. For this reason, and because the evidence establishes that Defendant fulfilled its obligation to provide notice of default under the Deed of Trust, Defendant is entitled to summary judgment on Plaintiff's beach-of-contract claim.

Fraud in the Inducement

Defendant is entitled to summary judgment on Plaintiff's fraudulent-inducement claim because the evidence establishes Defendant applied the funds it received under the April 2018 Repayment Plan according to the Deed of Trust's terms; Plaintiff's fraudulent-inducement claim is barred by the statute of frauds; and Plaintiff's allegations do not satisfy Rule 9(b)'s heightened pleading standard. "The elements of common law fraud under Texas law are (1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or

recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party, and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212-13 (5th Cir. 2009) (citing *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709 (S.D. Tex. 2004); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Because "[f]raudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof," to succeed on a fraudulent-inducement claim, a plaintiff must establish "the elements of fraud . . . as they relate to an agreement between the parties." *Coastal Bank SSB v. Chase Bank of Tex., N.A.*, 135 S.W.3d 840, 843 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Haase v. Glazner,* 62 S.W.3d 795, 798-99 (Tex. 2001)).

Plaintiff asserts that Defendant fraudulently induced her into entering the April 2018 Repayment Plan by representing to her that "her lump sum payment of $20,000 would be applied toward the arrearage amount," but, instead, "Defendant SPS applied the funds to her escrow (taxes and insurance) and interest." Pl.'s Pet. 8 ¶ 29. Plaintiff contends this act constitutes a false representation to which she relied upon to her detriment. *Id.* But the Deed of Trust sets forth how payments must be applied to the Note. Paragraph 3, "Application of Payments" provides,

> Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2;

11

> third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

Def.'s App. 75 ¶ 3. Paragraph 1 concerns "Payment of Principal and Interest; Prepayment and Late Charges." *Id.* 74 ¶ 1. And paragraph 2 refers to a section entitled "Funds for Taxes and Insurance," which authorizes the "Lender [to] . . . , at any time, collect and hold Funds . . . for Borrower's escrow account" to pay yearly taxes and assessments, yearly leasehold payments, yearly hazard or property insurance premiums, flood insurance premiums, mortgage insurance premiums, and any sum payable by the borrower to the lender in lieu of a mortgage insurance premium payment. *Id.* 75 ¶ 2. Thus, the Deed of Trust itself required Plaintiff's payment to be applied first to taxes and insurance under paragraph 2, before any funds could be applied to the principal. Accordingly, Defendant did not act fraudulently but complied with the Deed of Trust's terms. Plaintiff does not offer any evidence that the April 2018 Repayment Plan provided for a different application of payments.

Defendant is also entitled to summary judgment on Plaintiff's fraudulent-inducement claim because it is barred by the statute of frauds. Under Texas law, the statute of frauds applies to "loan agreement[s] in which the amount involved . . . exceeds $50,000 in value" and requires that they be "in writing and signed by the party to be bound or by that party's authorized representative" to be enforceable. Tex. Bus. Com. Code § 26.02(b). "Loan agreement[s]" include:

> promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents,

>> or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation.

*Id.* § 26.02(a)(2). Written contracts subject to the statute of frauds may not be modified orally. *Ellen v. F.H. Partners, LLC*, 2010 WL 4909973, at *5 (Tex. App.—Austin Dec. 1, 2010, no pet.) (quoting *Dracopoulas v. Rachal,* 411 S.W.2d 719, 721 (Tex. 1967)); *see also Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex. 1984) (citations omitted) ("It goes without saying that a contract required to be in writing cannot be orally modified except in limited circumstances such as extension of time for performance."); *SP Terrace, L.P. v. Meritage Homes of Tex., LLC*, 334 S.W.3d 275, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citations omitted) ("Generally, if a contract falls within the statute of frauds, then a party cannot enforce any subsequent oral material modification to the contract.").

In her Original Petition, Plaintiff alleges Defendant fraudulently induced her into entering the April 2018 Repayment Plan because Defendant "inform[ed] Plaintiff that her lump sum payment of $20,000.00 would be applied toward the arrearage[2] amount," and not "escrow (taxes and insurance) and interest." Pl.'s Pet.

---

[2] Defendant notes that "Plaintiff provides no definition for the term 'arrearage' in her Complaint," and asserts that if she intends to refer to "the amount delinquent and required to cure the default, the notice of default explicitly includes 'Escrow Payments (Taxes/Insurance)' in the itemization of the 'Amount Required to Cure.'" Def.'s Br. Support 17 n.3. (citing Def.'s App. 26). Therefore, Defendant argues any claim "that escrow shortages and or/taxes and insurance are not a portion of the amount required to cure . . . should also be dismissed based on the summary

13

8-9 ¶ 29. As discussed above, under paragraph 3, "Application of Payments," the Deed of Trust dictates how payments on the Note are to be applied—specifically, it requires payments received to be applied first "to any prepayment charges due under the Note," and "second, to amounts payable under paragraph 2, [Funds for Taxes and Insurance]," then to interest, and principal. Def.'s App. 75 ¶¶ 2-3. Because the Deed of Trust—which secured a loan in excess of $50,000, *see id.* 6-7 ¶¶ 5-6; Def.'s App. 16-21—is subject to the statute of frauds, Texas law requires any modification of its terms to be in writing, including a modification to the order in which payments must be applied. Plaintiff failed to respond to Defendant's argument that her fraudulent-inducement claim is barred by the statute of frauds, and the evidence presents no fact question as to whether this alleged modification was reduced to writing.

Defendant is also entitled to summary judgment on Plaintiff's fraudulent-inducement claim because her allegations do not meet Rule 9(b)'s heightened pleading standard. Federal Rule of Civil Procedure 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstance constituting fraud or

---

judgment evidence." *Id.* The Court finds that while the "Itemization of Amount Required to Cure" includes some "Escrow Payments," the Demand Letter also provides, "there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances, that . . . are not required to cure the payment default." Def.'s App. 26. However, it is unclear from Plaintiff's Original Petition whether she intends to make Defendant's suggested argument, and Plaintiff has not responded to Defendant's Motion to Dismiss or Motion for Summary Judgment to provide clarification. The Court, therefore, pretermits consideration of this argument.

14

mistake." Fed. R. Civ. P. 9(b). "The Fifth Circuit requires plaintiffs alleging fraud to specifically allege the 'time, place, and contents of the false representations, as well as the identity of the person making the representation and what the person obtained thereby.'" *Vision Bank v. Jordan*, 2012 WL 716097, at *2 (N.D. Tex. Mar. 5, 2012) (quoting *Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994); *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1994)). Put differently, "articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177-78 (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Here, Plaintiff avers that Defendant's alleged representation that her funds would be applied to the arrearage amount, rather than to escrow and interest, constitutes fraud. Pl.'s Pet. 8 ¶ 29. However, her Original Petition does not specify when this representation was made; where it was made; the identity of the speaker; or what the speaker obtained by making this false representation. *See id.*; *Vision Bank*, 2012 WL 716097, at *2. Additionally, Plaintiff failed to respond to Defendant's Motion to Dismiss or Motion for Summary Judgment to supplement her deficient allegations. Thus, the evidence establishes that Defendant properly applied the funds it received under the April 2018 Repayment Plan according to the Deed of Trust; Plaintiff's claim is barred by the statute of frauds; and her fraud allegations are insufficient under Rule 9(b). Accordingly, Defendant is entitled to

summary judgment on Plaintiff's fraudulent-inducement claim. The Court, therefore, does not reach Defendant's economic-loss argument.

## Injunction and Fees

Because the Court finds Defendant is entitled to summary judgment and that all of Plaintiff's claims against Defendant should be dismissed with prejudice, Plaintiff is not entitled to an injunction or attorney's fees. "Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action." *Cook v. Wells Fargo Bank, N.A.*, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (citing *Brown v. Ke–Ping Xie,* 260 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). "Injunctive relief is simply a form of equitable remedy." *Id.* (citing *Brown,* 260 S.W.3d at 122; *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002)). Plaintiff "seeks entry of a Temporary Injunction to maintain the status quo and prohibit the Defendant . . . from foreclosing or attempting to foreclose on Plaintiff's property until the merits of Plaintiff's various claims . . . can be fairly and fully adjudicated." Pl.'s Pet. 7 ¶ 24. Because the Court finds Defendant is entitled to summary judgment on all of Plaintiff's claims, Plaintiff is not entitled to injunctive relief.

Plaintiff also requests "reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff," as well as "exemplary damages." Pl.'s Pet. 9-10 ¶¶ 33-34. Like the Court's conclusion concerning Plaintiff's request for an injunction, the Court finds Plaintiff is not entitled to attorney's fees or damages because all of her claims fail. *See Gipson v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 11120538, at *27

(N.D. Tex. Oct. 27, 2015) (citations omitted) ("In any event, he is not entitled to attorney's fees because he has failed to plead any viable causes of action."); *Everhart v. CitiMortgage, Inc.*, 2013 WL 264436, at *10 (S.D. Tex. Jan. 22, 2013) (citations omitted) ("Last, because Plaintiffs have not pled any viable causes of action, their request for exemplary damages and attorney's fees should be dismissed. The Court agrees."). Accordingly, though Plaintiff failed to respond to Defendant's Motion for Summary Judgment, she requests an injunction and attorney's fees in her Original Petition, and those requests should be denied.

## RECOMMENDATION

For the reasons stated, the District Court should GRANT Defendant Select Portfolio Servicing, Inc.'s Motion for Summary Judgment (ECF No. 16) and DISMISS WITH PREJUDICE Plaintiff Tina L. Stoker's claims against Defendant. As a result, the Court should DENY as moot Defendant Select Portfolio Servicing, Inc.'s Rule 12(b)(6) Motion to Dismiss (ECF No. 9). The Court should also DENY Plaintiff's request for an injunction and for attorney's fees.

**SO RECOMMENDED**.

March 5, 2020.

                                                REBECCA RUTHERFORD
                                                UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).